**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| WILLIAM JACKSON | § | |
| | § | |
| v. | § | NO. A-10-CA-331 SS |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:  THE HONORABLE SAM SPARKS
     UNITED STATES DISTRICT JUDGE

The undersigned Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Before the Court are Plaintiff's Brief in Support of Review of Social Security Administration's Denial of Disability Benefits, filed August 19, 2011 (Clerk's Dkt. #38); Brief in Support of the Commissioner's Decision, filed October 18, 2011 (Clerk's Dkt. #39); Plaintiff's Reply to Defendant's Brief in Support of the Commissioner's Decision, filed October 28, 2011 (Clerk's Dkt. #42) and the Social Security Record filed in this case ("Tr.").

Plaintiff appeals from the determination of the Administrative Law Judge ("ALJ") that he is not "disabled" and presents for review the following issues: (1) whether the assessments of nontreating physicians provides substantial evidence to support the ALJ's decision; (2) whether the ALJ's finding of diminished credibility regarding Plaintiff's testimony is supported by the record; (3) whether the mixed assessments of treating physicians provide substantial evidence to support the

ALJ's decision; and (4) whether the ALJ properly determined Plaintiff's residual functional capacity ("RFC").

## I. BACKGROUND

At the time of his hearing on September 29, 2008, Plaintiff was 51 years old. He has a GED and some college training. (Tr. 64-65). He testified he had been living in his car since December 2007. (Tr. 77).

In his disability report filled out June 1, 2006, Plaintiff reported that he was unable to work full time as of July 12, 2004. (Tr. 207). He reported that for the thirteen years prior to that date, he was earning $2500 per month as an account examiner for the State Comptroller. Jackson stated he was required in that job to at least occasionally lift tax records weighing fifty pounds and carry them about twenty feet. (Tr. 212). He reported he was released due to the injury he suffered in July 2004 which left him with back, knee and shoulder pain, and unable to lift things. (Tr. 211).

The medical evidence reflects Plaintiff was seen in August 2004 at Airport Chiropractic & Rehabilitation following a fall in April 2004 at work for which he was taken to the emergency room. Jackson was reporting severe pain in his neck and back. A treatment plan involving manipulation and physical therapy was prescribed. A restriction of no lifting greater than ten pounds is noted. (Tr. 274-81). A one-page work recommendation dated July 12, 2006, also from Airport Chiropractic & Rehabilitation, states Jackson had chronic back pain since April 2004 but is able to work full time on light duty with a restriction of no lifting over twenty-five pounds and no prolonged/repetitive bending, twisting or standing. (Tr. 283).

Medical records dated March 2006 reflect Plaintiff was seen to establish care and for a prescription refill. He was complaining of various issues, including lower back pain. He was given

a prescription for Ibuprofen and x-rays were ordered. (Tr. 286-92). A radiological report dated May 2, 2006, notes Plaintiff has mild degenerative changes to his spine, consistent with degenerative disc disease. Physical therapy was ordered. (Tr. 315-17).

A consultative examination was performed by Carlos Gray, M.D. ("Gray") on September 25, 2006. Gray noted Plaintiff was complaining of constant lower back pain, aggravated by standing, walking and bending, but relieved by sitting down. Jackson reported treatment with pain killers, chiropractic and physical therapy had not helped much. Gray also noted "depression" in reviewing Jackson's symptoms. Gray reported Plaintiff was able to get on and off the exam table with mild difficulty due to his aches and pains. Gray further noted "[m]oderate pain on percussion and palpation of [Plaintiff's] lumbar spine" with moderate pain on flexion and extension. The diagnostic impression was low back pain secondary to degenerative disc disease. (Tr. 294-97).

John Wiley, M.D. ("Wiley") completed a physical RFC assessment of Plaintiff on October 12, 2006, without an examination. He noted the file did not contain any treating or examining source statements regarding Jackson's physical capacities. Wiley opined that Jackson was capable of lifting and carrying twenty pounds occasionally, ten pounds frequently, could sit, stand and/or walk six hours in an eight hour day, pushing and pulling the weights for lifting and carrying, occasionally climbing, balancing, stooping, kneeling, crouching and crawling. Wiley opined that Plaintiff's alleged limitations are not wholly supported by evidence of record, but did not provide any explanation or other support for his opinion. (Tr. 301-08).

A March 2007 outpatient rehabilitation status report indicated Plaintiff's impairments had been assessed in February 2007 as a walking tolerance of thirty minutes, sitting tolerance of thirty minutes, and painful sitting. The assessment in March showed little difference other than an

improvement in sleeping, a minimal ability to sit and a partial work ability. Accompanying notes indicate Plaintiff was reporting major improvement in lumbar radicular pain symptoms. but functional limits due to lumbar back pain. (Tr. 320-21). An April 2007 outpatient rehabilitation discharge summary reported Plaintiff had not attended his last three scheduled appointments. (Tr. 319). On April 16, 2007, Dr. Christine Hughes completed a form verifying Jackson was under a "disability to the lumbar spine." (Tr. 355).

Follow-up medical records of John Sadberry, M.D. ("Sadberry") dated July 6, 2007, indicate Plaintiff was reporting no lasting relief from chiropractic treatment, physical therapy or exercise. He was requesting pain medication. Sadberry's exam notes report no spinal kyphosis or scoliosis and good range of motion. Jackson was instructed to use up to 2400 mg of Ibuprofen daily. (Tr. 313-14).

Patty Rowley, M.D. ("Rowley") completed a physical RFC assessment of Plaintiff on August 3, 2007, without an examination. She also noted the file did not contain any treating or examining source statements regarding Jackson's physical capacities. Rowley opined that Jackson was capable of lifting and carrying fifty pounds occasionally, twenty-five pounds frequently, could sit, stand and/or walk six hours in an eight hour day, pushing and pulling the weights for lifting and carrying, frequently climbing, balancing, kneeling and crawling, and occasionally stooping and crouching. Notably, as supporting facts, Rowley cited Jackson's complaint that treatment had resulted in no lasting relied and that he required pain medication. Rowley opined that Plaintiff's alleged limitations are partly supported by evidence of record, but did not explain the basis of her opinion. (Tr. 322-29).

Records from Hall Chiropractic dated December 2007 reflect Plaintiff was again complaining of low back pain, following slipping and falling in a bathtub. The pain was reportedly made worse

4

by working and walking. He rated his pain as seven or eight on a scale of one to ten. (Tr. 333-46). X-rays showed a posterior/inferior right ilium with narrowing of the outside disc space and multiple vertebral disrelationships throughout the motor units of the lumbar spine. There was no evidence of fractures, dislocations or tumors. (Tr. 432).

Medical records provided by Linda Stephens, CFNP ("Stephens") from February 2008 indicate Plaintiff was complaining of back pain, which had increased after a fall in a bathtub. He was seeking pain medication. Stephens notes Jackson was reporting feeling "anxious or depressed all the time. (Tr. 412). In May 2008 Plaintiff reported to Stephens he still had back pain, although it was better after physical therapy and he would like to go back to therapy. He was reporting he could not do home exercises due to his homelessness. Stephens' physical exam noted tenderness and a limited range of motion due to pain, although improved from previous exams. Stephens noted no kyphosis or scoliosis, but did note tenderness and limited range of motion due to pain. She noted flexion finger to the ground was ten centimeters. Ibuprofen was prescribed. (Tr. 416-17).

A June 2008 outpatient rehabilitation status report noted Plaintiff's lumbar back pain was greatly aggravated by sleeping in his car. Significant flexibility deficits were noted as well. The report also indicates Plaintiff's insurance limited his access to physical therapy. (Tr. 383).

A hearing was held on September 29, 2008, at which Plaintiff testified. According to Jackson, he had worked for approximately fifteen years for the State Comptroller's Office, performing various jobs including account examiner, which involved entering, moving, and filing microfilm and as a mail clerk, which involved collecting, sorting, and delivering mail. (Tr. 66-82). He testified in 1998 he injured his back on the job, for which he received worker's compensation and was given an "easier job" for a while. (Tr. 74-75). Jackson stated he was injured again in April 2004

5

when a man pushing a mail cart ran into him at work. The 2004 incident impacted his legs and back. (Tr. 74-75, 81-83).

Jackson testified he had received chiropractic treatment. He was also prescribed Ibuprofen and Vicodin for his pain. Jackson testified he took the medication when he could, but the last doctor he saw discontinued the Vicodin prescription. He admitted he had not seen many doctors, testifying he had sought chiropractic care when he had money because he received the most help from such care. Plaintiff further testified he did not regularly obtain physical therapy due to lack of insurance coverage. (Tr. 83-84, 98). According to Jackson, his pain was constant, no matter the position he was in, and had worsened in the past year. He testified his pain at one point was better when sitting down, but that was no longer true. (Tr. 90-91).

Jackson testified his state employment was terminated in July 2004. (Tr. 82). He drove cars part-time for an auction house for some time, but was unable to work regularly because of back pain and was fired as a result. Jackson stated he had been unemployed since October 2007 and was living in his car. (Tr. 75-78, 90-94).

Vocational expert Susan Brooks ("Brooks") testified at the hearing that Plaintiff's past work as a microfilm processor and mail clerk were both rated as light, unskilled work. The ALJ posed a hypothetical claimant to Brooks who could perform light work and occasionally climb, crawl, squat, crouch, kneel, stoop or bend. Brooks testified such an individual would be able to perform any of Jackson's past jobs. (Tr. 98-99). Brooks further testified an individual with limitations of less than frequent reaching, handling and fingering would be unable to perform such jobs. (Tr. 100-01).

The ALJ's opinion found that Plaintiff suffers from the severe impairments of arthralgias in several joints and the back, as well as obesity. (Tr. 54). She noted that these impairments or

combination of impairments did not meet the requisite level of impairments as prescribed in the Social Security regulations. (Tr. 55). The ALJ found that Plaintiff retained the residual functional capacity to maintain employment at the level of lifting and carrying 20 pounds occasionally and 10 pounds frequently, sitting and/or walking at least 6 hours in an 8-hour workday, sitting at least 6 hours in an 8-hour workday and occasionally climbing, balancing, stooping, kneeling, couching and crawling. (Tr. 55). The ALJ characterized the treatment Plaintiff had received as "conservative" and limited, and further found the Plaintiff's credibility to be "diminished" as his allegations were not supported by the medical evidence as well as being inconsistent. (Tr. 57). Considering the testimony of the Vocational Expert, the ALJ determined that Plaintiff was capable of performing past relevant work as a mail clerk, cashier or microfilm processor, jobs which ere rated as light, unskilled work. (Tr. 58). Thus, the ALJ concluded that Plaintiff was not disabled for purposes of the Social Security Act.

## II. STANDARD OF REVIEW

The Court reviews the Commissioner's final decision in a limited fashion, as dictated by 42 U.S.C. § 405(g), determining whether: (1) substantial evidence of record supports the decision; and (2) whether the decision comports with proper legal standards. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In reviewing the evidence, this court does not substitute its judgment for the Commissioner's judgment. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). If there are conflicts

in the evidence, this court accepts the Commissioner's resolution of those conflicts so long as that resolution is supported by substantial evidence. *Id.*

### III. ANALYSIS

For the reasons that follow, the Court recommends that the Commissioner's decision be reversed and remanded for proceedings consistent with this opinion.

**A.     The ALJ Improperly Relied on Non-treating Physicians and Mixed Assessments**

Plaintiff first argues that the ALJ erred in relying on the assessments of nontreating physicians. He characterizes those assessments as conclusory and thus maintains they cannot provide substantial evidence to support the ALJ's decision. In a related issue, Plaintiff maintains the ALJ's decision is flawed because it relies on the mixed assessments of treating physicians, by focusing on the positive aspects of the exams and not the totality of the results..

As set forth above, the ALJ concluded Plaintiff retained the capacity to perform light work, specifically finding he could sit, stand or walk six hours and lift and carry twenty pounds occasionally and ten pounds frequently. As Plaintiff points out, the ALJ's conclusion mirrors that of the RFC assessment of Wiley. A decision denying benefits cannot stand where the "only real evidence to support the denial of benefits . . . [was] the two reports by the SSA 'Review' physicians," who had never examined the claimant. *Johnson v. Harris*, 612 F.2d 993, 998 (5th Cir. 1980) (reports of non-examining physicians are not substantial evidence on which to base administrative decision). *See also Strickland v. Harris*, 615 F.2d 1103, 1109-10 (5th Cir. 1980) (reports of nonexamining physicians alone are not substantial evidence for administrative decision).

Although the Commissioner concedes the record lacks an examining physician's opinion of Plaintiff's ability to perform the basic demands of work, and also concedes the record reflects a

diagnosis of degenerative disc disease, the Commissioner contends Wiley's assessment is not the only basis for the decision of the ALJ. Rather, the Commissioner suggests, the lack of objective evidence in the record of Plaintiff's impairment (such as neurological deficits, decreased strength or muscle atrophy) is sufficient to support the ALJ's decision.

Specifically, the Commissioner cites Sadberry's exam notes which report no spinal kyphosis or scoliosis and good range of motion. (Tr. 313). The Commissioner also cites the exams of Stephens in May 2008 and January 2009 as noting no spinal kyphosis or scoliosis, no focal weakness or gait disturbance, no muscle spasms and normal deep tendon reflexes. (Tr. 19, 423, 428). The Commissioner maintains "an absence of objective factors indicating the existence of severe pain—such as limitations in the range of motion, muscular atrophy, weight loss, or impairment of general nutrition—can itself justify the ALJ's conclusion." *Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988).

As Plaintiff points out, the facts in *Hollis* are quite distinguishable. Hollis argued her pain was disabling, a claim rejected by the ALJ. The Fifth Circuit concluded Hollis' complaints of pain were insufficient because she pointed to no objective facts beyond her own testimony which supported her claim, and further her examining physicians all noted her pain had not affected her range of motion and she had never complained that the pain medication prescribed was ineffective to curb her pain. *Hollis*, 837 F.2d at 1384-85. In contrast, in this case there are x-rays confirming Jackson has degenerative disc disease. Further, there are abundant notations in the medical records of Jackson's complaints of pain and complaints that his pain medication was not sufficient. Finally, in the very records cited by Commissioner, Stephens notes Plaintiff has an impaired range of motion due to his lumbar back pain. (Tr. 428). *See Williams v. Finch*, 440 F.2d 613, 616–17 (5th Cir. 1971)

9

(declining to find substantial evidence to deny benefits in assessments of treating physicians who noted plaintiff was in excellent health but also noted impairments). *See also Smith v. Califano*, 637 F.2d 968, 972 (5th Cir. 1981) (corroborating medical testimony essential to a finding of non-disability).[1]

The ALJ's reliance on Wiley's assessment is particularly troubling due to the conclusory nature of the assessment. As noted above, Wiley provides no explanation for his conclusion, but rather simply asserts the evidence of record does not support Plaintiff's alleged limitations, while at the same time noting Plaintiff's file did not contain any treating or examining source statements regarding his physical capacities. Social Security regulations instruct less weight is to be given to the opinions of nonexamining sources, and further instruct the weight "give[n] their opinions will depend on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. § 404.1527(d)(3). Accordingly, the Fifth Circuit has held an ALJ's finding that relied on a nonexamining sources "conclusory and unsubstantiated opinion that [the claimant] was not disabled . . . is not supported by substantial evidence." *Newton*, 209 F.3d at 457. In short, the undersigned agrees with Plaintiff that Wiley's opinion, even buttressed by the mixed opinions of treating sources, cannot provide substantial evidence for the ALJ's decision.

**B.     Plaintiff's Credibility**

Plaintiff argues that the ALJ failed to properly evaluate the credibility of his testimony regarding his physical limitations and other subjective symptoms, as is required by 20 C.F.R.

---

[1]Further, the citation of the lack of kyphosis or scoliosis is a complete red herring. Each of these is a disease causing curvature of the spine. But Plaintiff never claimed to suffer from these conditions, and thus the lack of spine curvature is irrelevant to whether there were objective signs of pain-causing conditions.

10

§ 404.1529. The ALJ found Plaintiff's allegations regarding his physical limitations to be not credible. (Tr. 57). The ALJ stated:

> After careful consideration of all of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The finding of diminished credibility is supported by inconsistencies between the claimants allegations of back pain and the paucity of objective medical evidence. Specifically, though the claimant complains of chronic and disabling back pain he has had little treatment other than chiropractic care until he sought treatment in 2008. At that time he reported he injured his jaw and back in a fall in December 2007 (although the claimant has alleged he was disabled since 2004). He underwent physical therapy and was reportedly better. In May 2008 he could flex his spine within 10 cm of his fingers to the floor. Another inconsistency is when he [was] examined in September 2006 he told the consultative examiner that his back pain was relieved by sitting which he denied at the hearing. The undersigned notes that despite his complaints of wrist pain he apparently only sprained [it] in December 2007. Moreover, at the time he applied for benefits, the claimant was working as a car driver at an auction working two and a half days a week. He testified that he stopped working in October 2007. The claimant has required strong pain medication only occasionally and was taking only over the counter medication at the time of the hearing.

(Tr. 57) (citations omitted). "The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). "Moreover, a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). The Social Security regulations, however, make clear a claimant's statements about the intensity, persistence and effect of his symptoms will not be rejected solely because they are inconsistent with the objective medical evidence. 20 C.F.R. § 404.1529(c)(2).

The ALJ in this case largely rested her finding of diminished credibility on the variance between Plaintiff's testimony and the medical evidence showing a lack of treatment and intermittent improvement in Plaintiff's physical condition. However, it is clear from the evidence that Plaintiff has been essentially unemployed and homeless since at least December 2007. Plaintiff explained at the hearing that his finances limited his ability to obtain treatment. He also explained that his physical limitations have varied over time. The variance in his symptoms is also noted in the medical evidence, and at least one provider suggested Plaintiff's sleeping in his car would likely have negatively affected his back pain. In sum, the ALJ's determination that Plaintiff's credibility is diminished appears to rest on her picking and choosing only portions of the medical evidence and failing to consider Plaintiff's testimony in the context of his financial straits. Thus, the Court finds that the ALJ's credibility finding is not based upon substantial evidence.

**C.     Plaintiff's RFC**

Plaintiff finally complains the ALJ's determination of his residual functional capacity was flawed. He maintains the ALJ failed to develop a complete medical history and fully consider all of his impairments. Specifically, Jackson points out there is no assessment by an examining physician of his ability to perform the basic demands of work. He further contends there is evidence in the record suggesting he suffered from depression, and the ALJ failed to develop any additional evidence or consider the effects of depression on his ability to work.

The ALJ has a basic obligation to develop a full and fair record. *Heckler v. Campbell*, 461 U.S. 458, 471, 102 S. Ct. 1952, 1959 (1983) (Brennan, J., concurring); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). However, reversal on the basis of a failure to meet this obligation is justified only on a showing of prejudice by the claimant. *Ripley*, 67 F.3d at 557. An ALJ is further

charged with considering the combined effect of all impairments, without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

The record shows that during the only consultative examination conducted in this case in September 2006, Dr. Gray noted Plaintiff had a history of depression. (Tr. 295). Further, Stephens noted Jackson was feeling depressed "all the time" in February 2006. (Tr. 412). Despite these notations, the ALJ did not consider mental impairments in addressing Plaintiff's RFC. Tellingly, the ALJ did comment on the "paucity" of the medical record in her opinion. (Tr. 57). In addition, Plaintiff has now presented evidence of a diagnosis of depression in February 2011. The diagnosis specifically notes the likelihood that Jackson had been depressed for a long time. (Plf. Brf. Ex. A). The Commissioner suggests the ALJ did not err because there is also evidence in the record suggesting Plaintiff did not suffer from depression. The Commissioner further argues Plaintiff cannot show he was prejudiced because he has not presented any evidence which might have altered the outcome, dismissing the medical records of 2011 as not probative of Plaintiff's earlier medical condition.

The Court disagrees. The Fifth Circuit has specifically held "noncontemporaneous medical records are relevant to the determination of whether onset occurred on the date alleged by the claimant." *Loza*, 219 F.3d at 393 (quoting *Ivy v. Sullivan*, 898 F.2d 1045, 1049 (5th Cir. 1990)). Because the ALJ had inadequate evidence before her to make an informed decision regarding Plaintiff's impairments, or combination of impairments, the Court finds that the ALJ must also reconsider Plaintiff's residual functional capacity on remand.

**D.     Remedy**

As the undersigned has concluded the Commissioner's decision is not supported by substantial evidence, the appropriate remedy for Plaintiff must be addressed. In judicial review of a determination by the Commissioner "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "Put differently, after a party appeals the Commissioner's denial of benefits, the district court can, among other things, award benefits or remand the case back to the Commissioner for further proceedings." *Murkeldove v. Astrue*, 635 F.3d 784, 792 (5th Cir. 2011). If the ALJ's decision is not supported by substantial evidence and the record enables this Court to determine definitively that the claimant is entitled to benefits, the Court should remand with the instruction to make an award. *McQueen v. Apfel*, 168 F.3d 152, 157 (5th Cir. 1999). Otherwise the Court should remand so the ALJ can take and consider additional evidence. *Id*. at 157-58.

The substantial evidence in this matter demonstrates that the Plaintiff is entitled to an award of benefits. The Plaintiff held a job with the same state agency for fifteen years before his injury. (Tr. 204-05, 212). Upon being injured he was unable to continue in that job, but attempted to work as a driver—a job he also lost because of his back pain. (Tr. 76-77). He has remained unemployed and homeless since that time, living out of his car as a result of his injury and inability to work. (Tr. 77-78). The objective medical evidence confirms that the Plaintiff suffers from degenerative disc disease, which is consistent with the pain he reports, and which has worsened due to his living conditions and inadequate access to treatment. (Tr. 286, 297, 355, 383, 416). There is also credible

evidence that the Plaintiff has suffered from depression for several years. (Tr/ 295, 412). He has been unable to receive treatment for these ailments because of his financial situation.

While it is possible that with treatment his conditions may improve to the point where he is able to engage in substantial gainful activity, that is not the case at present. Nor was it the case at the time the ALJ issued her decision. The Commissioner of course always retains the ability to examine whether the conditions of any person found to be disabled has improved to the point where he is able to once again work. It is possible that when the Plaintiff's depression is treated, and if and when he is able to obtain treatment or physical therapy for his back, his condition may improve to that point. The evidence before the Commissioner, however, demonstrated that the Plaintiff, at the time of the hearing, was disabled under the meaning of the Social Security Act.

## IV. RECOMMENDATION

The Magistrate Court **RECOMMEND**S that the District Court order the Commissioner's decision be reversed and the case remanded to the Commission for the award of benefits.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from

appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 5th day of January, 2012.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE